IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL E. RUFFIN          :

                     :

  v.              :  Civil Action No. DKC 26-244

                     :

CITY OF MOUNT RAINIER, MARYLAND   :

                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment law case is the motion to dismiss or, in the alternative, for summary judgment filed by the City of Mount Rainier ("Mount Rainier" or "Defendant"). (ECF No. 8). Some of the issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be treated as a motion to dismiss and will be granted as to the federal claims. The state law claims will be held in abeyance and may be remanded to state court unless Plaintiff amends to plead an adequate federal claim.

## I.   Background

### A.   Factual Background[1]

Daniel Ruffin "is an African American male over the age of 40" who worked as a police officer in the Mount Rainier Police

---

[1] The facts herein are as alleged in the complaint or as provided in undisputedly authentic documents that are integral to the complaint.

Department ("MRPD") for more than ten years.  (ECF No. 4 ¶¶ 1, 9).  Mr. Ruffin served as President of the Fraternal Order of Police ("FOP") in Mount Rainier and "regularly engaged in . . . union activity," such as "advocat[ing] for officer pay, benefits, safety, and working conditions."  (*Id.* ¶¶ 10–11).  His advocacy included "[o]pposing discriminatory pay practices" and "[r]aising concerns about officer treatment."  (*Id.* ¶ 43).  Prior to the period at issue in this case, he had "no sustained disciplinary findings."  (*Id.* ¶ 2).

In the period between May and June 2025, Mr. Ruffin "helped organize a vote of no confidence in [Mount Rainier] City Manager Kourosh Kamali."[2]  (*Id.* ¶ 12).  The FOP formally expressed the vote of no confidence in a letter ("No Confidence Letter") transmitted to the City Council on June 12, in which its members lamented Mr. Kamali's "pattern of retaliation, discrimination, harassment, and fostering [of] a toxic workplace culture within the Police Department."  (ECF No. 8-5, at 2).

Less than twenty-four hours after the vote of no confidence became public, Mr. Ruffin "was suspended and placed on

---

[2]  The City Manager of Mount Rainier is the "Chief Administrative Officer of the City, responsible to the Mayor and Council for the administration of all City affairs." *City Manager*, Mount Rainier, Md., https://www.mountrainiermd.org/212/City-Manager [https://perma.cc/C3PC-TMX6].

administrative leave." (ECF No. 4 ¶ 13). He alleges this suspension was "without pay," (*id.* ¶ 51), whereas the letter suspending Mr. Ruffin ("Suspension Letter") stated that he was suspended "with pay," (ECF No. 8-4, at 2). The Suspension Letter did not cite Mr. Ruffin's involvement in the vote of no confidence as the reason for his suspension. Instead, it cited a recent Equal Employment Opportunity Commission ("EEOC") complaint filed by a former MRPD officer alleging that Mr. Ruffin was "aware of an improper sexual relationship between" that former officer and another individual, "took no action to intervene, engaged in actions that furthered the improper relationship, and later engaged in retaliatory activities intended to force [the former officer] out of the Department." (*Id.*). An attorney for Mount Rainier later reiterated this reason. (ECF No. 4 ¶ 16). Mr. Ruffin alleges that "this explanation was false," (*id.* ¶ 17), and he "received no written charges, no notice, no Internal Affairs case number, and no opportunity to respond, contrary to Maryland law," (*id.* ¶ 14). Mr. Ruffin would remain on administrative leave during the pendency of the investigation. (*See id.* ¶ 51).

The timing of what followed the suspension is unclear. On Mr. Ruffin's telling, at some later time, "investigators . . . requested [Mr. Ruffin's] personnel file," but there was allegedly "no EEOC or related complaint . . . present." (*Id.* ¶ 18). The

file instead contained a letter terminating Mr. Ruffin ("Termination Letter") and documents alleging violations of Mount Rainier's secondary employment policy that supposedly "arose *after* [he] was suspended." (*Id.* ¶ 19). He alleges that the Termination Letter was "inserted . . . into [his] file without service or process." (*Id.* ¶ 24). Finally, he contends that MRPD Chief Perez "claimed that the suspension was actually due to this secondary-employment allegation," too. (*Id.* ¶ 20).

The Termination Letter itself was dated October 9, 2025, and states that it was sent via "First Class Mail and Electronic Mail" to Mr. Ruffin. (ECF No. 8-10, at 2). It explained that Mr. Ruffin was terminated for "violat[ing] numerous City of Mount Rainier policies by working secondary employment with Anne Arundel Community College repeatedly while on duty as a police officer with the City of Mount Rainier Police Department, and by regularly clocking in as if [he] w[as] working []on those dates." (*Id.*). It further provided that Mr. Ruffin could "elect a trial board" to review the termination, but that if he did not do so by October 17, 2025, his termination would take effect. (*Id.*). Lastly, it purported to include a copy of the investigation report, and it was signed by Mr. Kamali, the City Manager. (*Id.*).

Reflecting on his suspension and subsequent termination, Mr. Ruffin alleges that "[n]on-Black and younger officers with

multiple sustained Investigative Affairs findings," of a similar or more severe nature, "were never suspended, never placed on leave, and were given preferential treatment." (ECF No. 4 ¶¶ 22, 31, 36).

Mr. Ruffin filed a charge with the EEOC alleging "hostile work environment, harassment, discrimination, retaliation, lack of due process, and disparate treatment." (*Id.* ¶ 6). The EEOC issued a right-to-sue letter on October 7, 2025. (*Id.* ¶ 7).

**B.   Procedural Background**

On December 1, 2025, Plaintiff Mr. Ruffin filed a complaint in the Circuit Court for Prince George's County, Maryland, against Defendant Mount Rainier. He asserts the following seven counts: race discrimination under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I); age discrimination under the MFEPA and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count II); retaliation under the MFEPA, the Maryland Police Accountability Act ("MPAA"), Md. Code Ann., Pub. Safety § 3-101 *et seq.*, and 42 U.S.C. § 1983 (Count III); hostile work environment under the MFEPA and 42 U.S.C. § 1983 (Count IV); procedural and substantive due process violations under Articles 19 and 24 of the Maryland Declaration of Rights and 42 U.S.C. §

1983 (Count V); wrongful constructive termination (Count VI); and violation of the MPAA, brought under both the MPAA and 42 U.S.C. § 1983 (Count VII).  (ECF No. 4).  Defendant removed the case to this court on January 21, 2026.  (ECF No. 1).

Defendant then moved to dismiss or, in the alternative, for summary judgment on the complaint on February 25.  (ECF No. 8). Plaintiff responded on March 23, (ECF No. 11), and Defendant replied on March 31, (ECF No. 12).

## II.  Defendant's Motion

As a threshold matter, the court must determine how to analyze Defendant's motion.  Defendant moves to dismiss for failure to state a claim or, in the alternative, for summary judgment and attaches numerous exhibits.  "'A motion styled in this manner implicates the court's discretion under Rule 12(d)' . . . to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert County*, No. 15-cv-920-GJH, 2016 WL 5335477, at *3 (D.Md. Sep. 22, 2016) (quoting *McCray v. Md. Dep't of Transp.*, No. 11-cv-3732-ELH, 2013 WL 210186, at *15 (D.Md. Jan. 16, 2013), *aff'd in part, vacated in part on other grounds*, 741 F.3d 480 (4th Cir. 2014)) (citing Fed.R.Civ.P. 12(d); *McCray*, 2013 WL 210186, at *16).

Two requirements must be met before converting a motion to dismiss into one for summary judgment: (1) actual notice to the

6

nonmovant that the conversion may occur, and (2) reasonable opportunity for discovery. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). The first requirement is met when the movant styles its motion to dismiss as one for summary judgment in the alternative. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998). Here, as noted, Defendant styled its motion as a "Motion to Dismiss or, in the Alternative[,] for Summary Judgment." (ECF No. 8, at 1).

The second requirement is met for a prediscovery motion when the nonmovant fails to "file an affidavit or declaration pursuant to Rule 56(d) . . . explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery." *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F.Supp.2d 524, 542–43 & 543 n.26 (D.Md. 2012) (quoting Fed.R.Civ.P. 56(d)) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)); *see also Harrods*, 302 F.3d at 244 ("[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996))). But "[w]hen the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not

always insisted on a Rule [56(d)] affidavit if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Harrods*, 302 F.3d at 244 (citing *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380–81 (D.C. Cir. 1988); *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97–98 (2d Cir. 2000); *Farmer v. Brennan*, 81 F.3d 1444, 1449–50 (7th Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1214 n.3 (11th Cir. 1992)).

Here, although Plaintiff did not file a Rule 56(d) affidavit explaining why further discovery is necessary, he has done enough to avoid conversion. Because the case is at an early stage, Plaintiff has had little to no opportunity to conduct discovery. Moreover, the employment claims he brings turn on fact-intensive questions of discriminatory intent. And his response in opposition explicitly resists conversion for lack of a reasonable opportunity to conduct discovery, identifying various depositions and categories of documents he deems necessary to contest Defendant's arguments. (ECF No. 11, at 21–22). Although not as specific as it should be, Plaintiff's response suffices. His objection "serve[s] as the functional equivalent of an affidavit" and "adequately inform[s] the . . . court that the motion is premature and that more discovery is necessary." *Harrods*, 302 F.3d at 244–45 (citation modified).

8

Defendant's motion will therefore be treated as one to dismiss for failure to state a claim.

## III. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff."  *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). Ordinarily, a plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).   A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant

is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

## IV. Analysis

Plaintiff's factually sparse complaint asserts seven counts under a variety of federal and state laws.  He fails to state a federal claim, and supplemental jurisdiction over his state claims is therefore unwarranted.  Should Plaintiff choose not to file an amended complaint, his federal claims will be dismissed with prejudice, and his state claims will be remanded.

### A.    Federal Claims

### 1.    Title VII and ADEA Claims (Counts I & II)

Plaintiff alleges that Defendant discriminated against him on the basis of race and age in violation of Title VII and the ADEA when it suspended and then terminated him.  These statutes make it unlawful for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment[] because of such individual's race" or age.  42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1).

"Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly

10

situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (italics added), *aff'd sub nom. on other grounds*, *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012).  A *prima facie* discrimination case under the ADEA shares substantially the same elements, with the specification that the protected class is individuals at least forty years of age.  *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); 29 U.S.C. § 631(a).  A plaintiff need not "plead facts that constitute a *prima facie* case in order to survive a motion to dismiss," *Coleman*, 626 F.3d at 190 (italics added) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)); instead, he "can survive a motion to dismiss a Title VII [or ADEA] claim if he simply presents allegations sufficient to reasonably infer a *prima facie* case of discrimination," *Niederberger v. Wegmans Food Mkts., Inc.*, No. 23-cv-2759-JKB, 2024 WL 2866609, at *3 (D.Md. June 6, 2024) (italics added) (quoting *Walton v. Greensville Corr. Ctr.*, No. 14-cv-628, 2015 WL 2452451, at *10 (E.D.Va. May 21, 2015)).  *See also Coleman*, 626 F.3d at 190–91 (assessing whether the plaintiff plausibly alleged elements of a *prima facie* case); *accord Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." (italics added)); *Littlejohn v. City of New York*, 795 F.3d

297, 311 (2d Cir. 2015) ("The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII [or ADEA] litigation."). Because Plaintiff offers no suggestion of direct evidence of race or age discrimination, the question is whether he alleges facts from which a *prima facie* case can reasonably be inferred.

Assuming that both the suspension and termination constituted adverse actions, Defendant argues that Plaintiff's race and age discrimination claims each fail for the same two reasons: (1) he was not satisfactorily performing his job given the EEOC charge implicating him at the time of his suspension and the secondary employment violations discovered before his termination, and (2) he does not sufficiently identify a comparator. (ECF No. 8-1, at 12–13, 15–16). Only the second argument is persuasive. First, Defendant improperly collapses its legitimate, nondiscriminatory reason into Plaintiff's satisfactory job performance. The offense a defendant cites as the reason for a plaintiff's discipline "is most appropriately viewed as relevant to the analysis of whether there is a legitimate non-discriminatory reason for the adverse employment action, not whether the plaintiff had satisfactory job performance." *Rorie v. Bd. of Educ.*, 653 F.Supp.3d 217, 231 (D.Md. 2023) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1106 (4th

Cir. 1985)).  Thus, the EEOC charge and supposed secondary employment violations are legitimate, nondiscriminatory reasons that have no bearing on the satisfactory job performance element and no place in a Rule 12(b)(6) analysis of a *prima facie* case. Rather, a plaintiff's allegation "of satisfactory performance prior to the incident[s] in question is sufficient." *Id.*  Here, Plaintiff alleges that he had "an exemplary record and no sustained disciplinary findings" during his ten-year tenure prior to his suspension and termination.  (ECF No. 4 ¶¶ 2, 9).  That is enough.

Second, however, Defendant is correct that Plaintiff has failed to identify a valid comparator.  As Judge Gallagher has explained:

> The fourth element of a *prima facie* claim may be shown based "on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances."  *Booth*[ *v. Cnty. Exec.*], 186 F.Supp.3d [479,] 486 [(D.Md. 2016)] (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).  A comparator should be similarly situated in all relevant aspects.  *Sawyers v. United Parcel Serv.*, 946 F.Supp.2d 432, 442 n.2 (D.Md. 2013).  "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Johnson*[ *v. Balt. City Police Dep't*, No. 12-cv-2519-ELH], 2014 WL 1281602, at *19 [(D.Md. Mar. 27, 2014)] (quoting

13

> *Haywood v. Locke*, 387 F.App'x 355, 359 (4th
> Cir. 2010)).

*Jacques v. Balt. City Police Dep't*, No. 21-cv-2682-SAG, 2022 WL 1061980, at *4 (italics added); *see also Glanville v. Mayor & City Council of Balt.*, No. 23-cv-3395-EA, 2025 WL 1359218, at *5 (D.Md. May 9, 2025).   In *Jacques*, Judge Gallagher concluded that the plaintiff's allegations were conclusory because they failed to "describe—even anonymously—any comparator's job titles, responsibilities, or supervisors," nor did they provide any "information on the substance of the allegations against comparators" or "explain how these allegations are analogous to those made against Plaintiff."  *Id.* at *5.

Plaintiff's allegations here suffer from precisely the same deficiencies.  He alleges in conclusory fashion that "[n]on-Black employees with more serious or sustained misconduct records were not suspended, removed from duty, or subjected to similar treatment," and that "Defendant treated younger, less-qualified officers more favorably, provided them opportunities denied Plaintiff, and declined to discipline younger officers for similar or more serious conduct."  (ECF No. 4 ¶¶ 31, 36).   He fails to identify these non-Black or younger employees' job titles, responsibilities, or supervisors, provide information on the substance of their misconduct other than his conclusion that it was more serious, or explain how their misconduct is analogous to

14

his.   Therefore, Plaintiff does not plausibly allege that the comparators are similarly situated to him and received more favorable treatment.   "Absent such support, the complaint's allegations of race [and age] discrimination do not rise above speculation."  *Coleman*, 626 F.3d at 191.   Counts I & II will be dismissed.

### 2.   Section 1983 Claims (Counts III–V, VII)

Plaintiff asserts claims under § 1983 in Counts III (retaliation), IV (hostile work environment), V (procedural due process), and VII (violation of the MPAA).   These claims fail at the threshold due to § 1983's particular pleading requirements. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  Any plaintiff seeking to state a claim under § 1983 must therefore satisfy two elements: (1) deprivation of a right secured by the U.S. Constitution or federal law, (2) by a person acting under color of state law. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001).

15

When the alleged deprivation occurred at the hands of municipal officials, the plaintiff may pursue a § 1983 claim in either or both of the following ways.  First, he may sue the municipality itself, which is a "person" under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A municipality may not be held liable on a *respondeat superior* theory, but rather "only for its *own* illegal acts."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).  Accordingly, the plaintiff must identify an official policy or custom of the municipality that led to the deprivation.  *See Hunter v. Town of Mocksville*, 897 F.3d 538, 554 (4th Cir. 2018).  There are at least four ways to demonstrate a municipal policy or custom: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final decisionmaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens;' or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

16

The other way the plaintiff can pursue a § 1983 claim is to name the responsible municipal official(s) as defendant(s).  To do so, the plaintiff must sue the municipal official in his or her personal capacity but need not "establish a connection to governmental 'policy or custom.'"  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).

Plaintiff ostensibly chose the first route because he named only the City of Mount Rainier as a defendant.  But he entirely fails to allege any official policy or custom.  For example, he does not identify who suspended or terminated him, nor does he allege whether that person had final decisionmaking authority. Instead, he alleges passively that he "was suspended," (ECF No. 4 ¶ 13), and "was [later] constructively terminated as a result of Defendant's actions," (*id.* ¶ 26).  Defendant is a municipality that only acts through its officials; thus, Plaintiff's reference to "Defendant's actions" is unilluminating.  And, unless Plaintiff remedies that pleading deficiency by clearly and precisely identifying who, acting for Mount Rainier, violated his rights, it is not possible to assess the merits of Defendant's other arguments on these claims.

As Plaintiff has failed to state a claim under either theory of liability, Plaintiff's § 1983 claims against Defendant will be dismissed.   Plaintiff will have the opportunity to amend his

17

complaint to allege a policy or custom by Defendant and/or to name the officials in their personal capacity who were responsible for the alleged § 1983 violations.

### B.    State Claims

When all federal claims are dismissed, remand of the state claims may be the proper course.  *Waybright v. Frederick County,* 528 F.3d 199, 209 (4th Cir. 2008) ("With all [the] federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so."); 28 U.S.C. § 1367(c)(3).  At this early juncture, Plaintiff's failure to allege a viable federal claim counsels against the exercise of supplemental jurisdiction over his remaining state claims.   Before effectuating the remand, however, the court will provide Plaintiff twenty-one (21) days to file a robust amended complaint that asserts a valid federal claim. If Plaintiff opts not to amend within twenty-one days, then the court will issue an order dismissing his deficient federal claims with prejudice.   The court will then remand his state claims but delay the remand for thirty days to give the parties an opportunity to move to stay the remand pending appeal.  *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 81 (1st Cir. 2021) (explaining that when a district court decides to remand "in a removed case and the remand order is appealable, the district court may wish to

18

avoid immediately certifying the remand order and returning the case file to the state court until it believes" the risk of needing to retrieve the state claims due to reversal on appeal "has abated"); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009) (holding that a remand order is appealable if it is based on the court's decision to decline to exercise supplemental jurisdiction).

## V.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment will be granted in part (as to the federal claims) and deferred in part (as to the state law claims).  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
